39

1  BARRY H. SPITZER, State Bar #161525
LAW OFFICE OF BARRY H. SPITZER
2  980 9th Street, Suite 380
Sacramento, California 95814
3
Telephone: (916) 442-9002
4  Facsimile: (916) 442-9003

5  Attorneys for Plaintiffs
Jacob Watson and James Watson
6

7

8  **UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| 10  In re:                          ) | CASE NO. 21-20167-A-13C |
| 11  HARLAN PAGE CONFER, III and<br>CHARLOTTE CLUFF CONFER,    ) | ADVERSARY NO. |

10  In re:                                       )        CASE NO. 21-20167-A-13C

11  HARLAN PAGE CONFER, III and          )        ADVERSARY NO.
CHARLOTTE CLUFF CONFER,              )
12                                               )        **COMPLAINT TO DETERMINE**
                       Debtors.              )        **DISCHARGEABILITY OF**
13                                               )        **DEBT PURSUANT TO 11**
                                                  )        **U.S.C. SECTIONS**
14  _____)        **523(a)(2)(A) and 523(a)(6)**
                                                  )
15  JACOB WATSON and JAMES WATSON,)
                       Plaintiffs         )
16                                               )
     v.                                          )
17                                               )
     HARLAN PAGE CONFER, III and          )
18  CHARLOTTE CLUFF CONFER,              )
                                                  )
19                     Defendants.        )
_____)

20        Plaintiffs Jacob Watson and James Watson (hereinafter referred to as the

21  "Plaintiffs"), by and through their counsel, bring this Complaint to Determine

22  Dischargeability of Debt against Defendants, Harlan Page Confer, III and Charlotte Cluff

23  Confer, and allege as follows:

24        1.    This Court has jurisdiction over the subject matter of the within adversary

25  proceeding pursuant to 28 U.S.C. Section 1334; 28 U.S.C. Section 157(a); 28 U.S.C.

26  Section 157(b)(1); and 11 U.S.C. Section 105.   The Bankruptcy Judges for this District

27  may hear and determine this case pursuant to 28 U.S.C. Sections 157(a) and 157(b), and

28  pursuant to General Order No. 182, issued by the Judges of the United States District

1    Court for the Eastern District of California on May 14, 1985, which order was renewed by

2    General Order No. 223, issued by the judges of the United States District Court for the

3    Eastern District of California on October 22, 1987.

4        2.     This adversary proceeding constitutes a "core" matter pursuant to 28 U.S.C.

5    Section 157(b)(2)(I), and as such, the Bankruptcy Judge may enter a final judgment in this

6    case, to which Plaintiffs consent.

7        3.     Harlan Page Confer, III and Charlotte Cluff Confer hereinafter referred to as

8    the "Defendants") filed a voluntary Chapter 13 bankruptcy petition on January 20, 2021.

9        4.     Plaintiffs are individuals residing within the Eastern District of California.

10       5.     Defendants are individuals who reside in Red Bluff, Tehama County,

11   California which is situated within the Eastern District of California.

12       6.     Venue is proper before this Court pursuant to the provisions of 28 U.S.C.

13   Section 1409.

14   FACTUAL ALLEGATIONS

15       7.     The Defendants real property commonly known as 295 San Joaquin Drive,

16   Red Bluff, Tehama County, California 96080; APN 039-242-03-1 (hereinafter referred to

17   as "Subject Property") was scheduled to go to a foreclosure sale on Monday January 27,

18   2020 at approximately 2:00 p.m.

19       8.     On Sunday January 26, 2020, Realtor Edward J. Lenzer contacted the

20   Defendants at their home and conveyed an offer on behalf of Plaintiffs to purchase the

21   Subject Property prior to the foreclosure sale.

22       9.     The terms of the purchase referred to in paragraph 8 would have netted the

23   Defendants approximately $25,000.00, after paying the holders of the deeds of trust and

24   costs of sale.

25       10.    Mr. Lenzer prepared a California Residential Purchase Agreement and Joint

26   Escrow Instructions dated January 26, 2020.  A true and correct copy of the California

27   Residential Purchase Agreement and Joint Escrow Instructions is Exhibit B to Exhibit 1.

28   / / / /

11.     The California Residential Purchase Agreement and Joint Escrow Instructions was signed by the Defendants in front of a notary of the Defendants choosing on January 27, 2020.

12.     After the Defendants signed the California Residential Purchase Agreement and Joint Escrow Instructions on January 27, 2020, a conference call occurred including the Plaintiffs, Defendants and the representative of the entity foreclosing on the Subject Property to determine the amount needed to stop the foreclosure and the wiring instructions. The Defendants gave permission to allow the Plaintiffs to speak with the the representative of the entity foreclosing. Mr. Confer thanked the Plaintiffs during and after the call for stopping the foreclosure sale.

13.     Plaintiffs wired $19,967.88 to Defendants lender outside of escrow on or about January 27, 2020 and later opened escrow 5102-6136076 at First American Title Company in Yuba City, California with an additional deposit of $2,032.12, for a total of $22,000.00.

14.     Thereafter, the Defendants refused to sign any escrow documents or cooperate with escrow at all, thereby preventing Plaintiffs from obtaining possession of the Subject Property.

15.     Defendants were obligated to surrender possession of the Subject Property on March 27, 2020 to Plaintiffs pursuant to the California Residential Purchase Agreement and Joint Escrow Instructions, but did not do so. An oral extension was given by the Plaintiffs to the Defendants to vacate on or about April 27, 2020. Defendants again did not comply and Defendants did not vacate the Subject Property.

16.     On June 8, 2020, Plaintiffs caused a complaint to be filed in the Tehama Superior Court against the Defendants for Specific Performance; Breach of Contract and Fraud by Intentional Misrepresentation, Case No. 20CI000087 regarding the Subject Property. A true and correct copy of the Tehama Superior Court complaint is Exhibit 1.

17.     On October 7, 2020, Judge Richard S. Scheuler of the Tehama Superior Court issued an Order which required Defendants to sign First American Title Escrow

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. SECTIONS 523(a)(2)(A) and 523(a)(6)

1  Instructions consistent with the Purchase Contract. A true and correct copy of the Tehama

2  Superior Court Order is Exhibit 2 (without exhibits).

3       18.    The Tehama Superior Court Order further required Defendants to sign and

4  have notarized a Deed to the Subject Property transferring the Subject Property to Plaintiffs

5  and to deposit said Deed with First American Title. The escrow was ordered to be closed

6  no later than 90 days from the date of execution of the Tehama Superior Court Order. The

7  Tehama Superior Court Order was hand delivered to both Defendants on October 9, 2020.

8  A true and correct copy of the proof of service of the Tehama Superior Court Order is

9  Exhibit 3.

10       19.    Plaintiffs state court attorney, Stephen M. Dean, was thereafter contacted on

11  October 21, 2020 by attorney Nathan O.S. Jones on behalf of the Defendants seeking a

12  settlement which would allow the Defendants to remain in the Subject Property.

13       20.    The terms of the proposed settlement would have required payment to

14  Plaintiffs in the amount of $67,000.00 within 45 days of a October 23, 2020 confirming

15  letter from Mr. Dean to Mr. Jones. A true and correct copy of the October 23, 2020 letter

16  is Exhibit 4.

17       21.    Mr. Dean did not hear back from Mr. Jones or any other party representing

18  the Debtors after the October 23, 2020 letter. On November 11, 2020, Mr. Dean sent a

19  letter to Mr. Jones to follow up on the settlement offer. A true and correct copy of the

20  November 11, 2020 letter is Exhibit 5.

21       22.    Defendants did not comply with any portion of the Tehama Court Order or the

22  proposed settlement. Instead, the Defendants filed their Chapter 13 petition on January

23  20, 2021.

24       23.    Defendants Chapter 13 plan does not address the Tehama Court Order,

25  instead the Defendants state they are the owners of the Subject Property and they had an

26  unsecured debt to Watson in the amount of $32,174.42.

27       24.    Defendants plan proposes paying a 0% dividend to nonpriority unsecured

28  creditors.

### FIRST CLAIM FOR RELIEF

### Fraud under 11 U.S.C. Section 523(a)(2)(A)

25.　Plaintiffs re-allege all allegations contained in paragraphs 1 through 24 of this Complaint and by reference incorporates the same herein as though realleged in full.

26.　Defendants, through false pretenses and false representations, caused Plaintiffs to pay $19,967.88 to Defendants lender outside of escrow and open escrow 5102-6136076 at First American Title Company in Yuba City, California with an additional deposit of $2,032.12, for a total of $22,000.00.　Plaintiffs were defrauded in the above-described transactions.　It was falsely represented by Defendants that Defendants would sign the necessary documents to effectuate a transfer of the Subject Property to Plaintiffs pursuant to the California Residential Purchase Agreement and Joint Escrow Instructions, but Defendants did not do so.

27.　Plaintiffs justifiably relied upon and believed Defendants as hereinabove set forth.

28.　Had Plaintiffs known the true facts that Defendants had no intention to sign the necessary documents to effectuate a transfer of the Subject Property to Plaintiffs pursuant to the California Residential Purchase Agreement and Joint Escrow Instructions, Plaintiffs never would have agreed to pay $19,967.88 to Defendants lender outside of escrow and to open escrow 5102-6136076 at First American Title Company in Yuba City, California with an additional deposit of $2,032.12.　As a result of said fraudulent representations, Plaintiffs were induced to provide $22,000.00 to and on behalf of Defendants and did so.　As a result of said action, Plaintiffs have been damaged in the principal amount of $22,000.00.

29.　At the time Defendants induced Plaintiffs to pay the funds described in paragraph 28, Defendants had neither an intention nor expectation of signing the necessary documents to effectuate a transfer of the Subject Property to Plaintiffs pursuant to the California Residential Purchase Agreement and Joint Escrow Instructions.

/ / / /

30. Plaintiffs, at the time Defendants promises were made to them, were ignorant of Defendants secret intentions not to sign the necessary documents to effectuate a transfer of the Subject Property to Plaintiffs pursuant to the California Residential Purchase Agreement and Joint Escrow Instructions, and Plaintiffs could not, in the exercise of reasonable diligence, have discovered Defendants secret intentions.

31. When Defendants made the above-noted representations, they knew them to be false. Defendants made these representations with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in the matter herein alleged. Defendants were aware that Plaintiffs relied upon their misrepresentations and intentionally took advantage of such in pursuit of their aforementioned fraud.

32. Despite the Tehama Superior Court Order which required Defendants to sign First American Title Escrow Instructions consistent with the Purchase Contract prior to Defendant's bankruptcy proceeding, Defendant has failed and refused to do so.

33. Plaintiffs expended $8,091.00 in attorney fees and $1,199.51 in costs, for a total of $9,290.51 related to the Tehama Superior Court case. The California Residential Purchase Agreement and Joint Escrow Instructions provides for attorney fees and costs at paragraph 22.

34. As a result of Defendants false pretenses and false representations, Plaintiffs suffered damages in the amount of $31,290.51 plus interest thereon from and after January 27, 2020, until paid in full related to the Tehama Superior Court case. Additionally, Plaintiffs entitled to recover their attorneys fees and costs related to this Adversary proceeding pursuant to the California Residential Purchase Agreement and Joint Escrow Instructions which provides for attorney fees and costs at paragraph 22.

35. By reason of the foregoing, Defendants obligation to Plaintiffs of $31,290.51, plus attorneys fees and costs related to this Adversary proceeding, is nondischargeable pursuant to 11 U.S.C. section 523(a)(2)(A).

/ / / /

/ / /

## SECOND CLAIM FOR RELIEF

### Willful and Malicious Injury by Defendants to Another Entity or to the Property of Another Entity Under 11 U.S.C. section 523(a)(6)

36.     Plaintiffs re-allege all allegations contained in paragraphs 1 through 35 of this Complaint and by such reference incorporates the same herein as though realleged in full.

37.     Defendants acted despicably, maliciously, intentionally and with conscious disregard of Plaintiffs rights and property. Defendants knew that Plaintiffs were using their funds to pay $19,967.88 to Defendants lender outside of escrow.

38.     The above-described acts and/or conduct of Defendants were done intentionally, wrongfully, willfully and maliciously, causing injury to Plaintiffs all within the meaning of 11 U.S.C. section 523(a)(6).

39.     As a result of Defendants wrongful conduct and larceny, Plaintiffs have suffered damages in the amount $31,290.51, plus attorneys fees and costs related to this Adversary proceeding, plus interest thereon from and after January 27, 2020, until paid in full.

**WHEREFORE**, Plaintiffs pray for an entry of judgment from this Court on all of their claims against Defendants as follows:

1.     That any and all indebtedness of whatever form owed by Defendants Harlan Page Confer, III and Charlotte Cluff Confer to Plaintiffs Jacob Watson and James Watson be non-dischargeable under 11 U.S.C. sections 523(a)(2)(A) and 523(a)(6) in the amount of $31,290.51, plus attorneys fees and costs related to this Adversary proceeding, plus interest thereon from and after January 27, 2020, until paid in full;

2.     For costs of suit and reasonable attorney fees under the California Residential Purchase Agreement and Joint Escrow Instructions and applicable law; and

3.     For such other and further relief as the Court may deem appropriate.

DATED: April 26, 2021                    LAW OFFICE OF BARRY H. SPITZER

By: _____
BARRY H. SPITZER
Attorneys for Plaintiffs

Endorsed

FILED
SUPERIOR COURT OF CALIFORNIA

JUN 0 8 2020

COUNTY OF TEHAMA
KEVIN HARRIGAN, CLERK OF THE COURT
BY Patience Westphal     DEPUTY

1  STEPHEN M. DEAN
   State Bar No. 73328
2  Attorney at Law
   MICHAEL E. M. DEAN
3  State Bar No. 287775
   Attorney at Law
4  DEAN LAW FIRM, INC.
   1610 West Street, Suite 2
5  P.O. Box 994134
   Redding, California 96099-4134
6  Telephone: (530)246-7691
   Fax No.: (530)246-7910
7
8  Attorney for Plaintiffs

9           SUPERIOR COURT OF CALIFORNIA
          IN AND FOR THE COUNTY OF TEHAMA
10             UNLIMITED JURISDICTION
                    -oOo-
11
   Plaintiffs: JACOB WATSON and     )  CASE NO. 20CI000087
12             JAMES WATSON         )
   vs.                              )  COMPLAINT FOR SPECIFIC
13                                  )  PERFORMANCE; BREACH OF
   Defendants: HARLAN P. CONFER;    )  CONTRACT; FRAUD BY
14             aka HARLAN PAGE CONFER,)  INTENTIONAL
               III;                 )  MISREPRESENTATION
15             CHARLOTTE C. CONFER;  )
               and DOES I-XX, inc.  )  [Civil Code §§ 1710,
16                                  )   3300, 3384, 3387]

17              **FIRST CAUSE OF ACTION**
                  (Specific Performance)
18

19      1.   Plaintiffs   JACOB   WATSON   and   JAMES   WATSON

20  ("Plaintiffs")  are  individuals  and  are  now,  and  at  all  times

21  mentioned in this complaint were, individuals doing transactions

22  in Tehama County, California.

23      2.   Plaintiffs  are  informed  and  believe,  and  on  this

24  information and belief, allege that Defendants HARLAN P. CONFER

25  aka HARLAN PAGE CONFER, III and CHARLOTTE C. CONFER ("CONFER")

26  are  individuals  who  at  all  times  mentioned  in  this  Complaint

27

EXHIBIT 1

1  were, and are, individuals residing in Tehama County,

2  California.

3     3.  Plaintiffs are ignorant of the true names and

4  capacities of Defendants sued herein as DOES I through XX

5  inclusive, and therefore sues these Defendants by such

6  fictitious names.  Plaintiffs will amend this complaint to

7  allege their true names and capacities when ascertained.

8     4.  The property at issue in this case is that certain real

9  property commonly known as 295 San Joaquin Drive, Red Bluff,

10  Tehama County, California 96080, as more particularly described

11  in the legal description attached hereto as Exhibit "A" and made

12  a part hereof. ("Said Real Property")

13     5.  The current owner of Said Real Property is Defendants

14  CONFER.

15     6.  On or about January 27, 2020, Defendants CONFER and

16  Plaintiffs entered into a contract whereby Plaintiffs would buy

17  Said Real Property for $136,000.00 cash.  A true copy of the

18  contract is attached hereto as Exhibit "B" and made a part

19  hereof.

20     7.  Plaintiffs paid Defendants $22,000.00 on or about

21  January 27, 2020 which Defendants CONFER used to pay a lender

22  threatening to foreclose on the property.

23     8.  Plaintiffs opened escrow with First American Title

24  Company, and paid an additional deposit of $2,032.12 to escrow.

25  Plaintiffs are ready to close escrow.  A true copy of the First

26

27

American Title Estimated Settlement Statement is attached hereto as Exhibit "C" and made a part hereof.

9. Defendants CONFER have failed and refuse and continue to fail and refuse to sign the closing documents so escrow can close.

10. Plaintiffs have fulfilled all obligations currently required under the purchase contract, and are willing to deposit all funds required and sign all documents necessary for escrow to close.

11. Defendants CONFER refuse to perform the purchase agreement, and have kept the $22,000.00 paid outside of escrow to Plaintiff's detriment.

12. Plaintiffs remain willing to perform all terms of the contracts applicable to Plaintiffs and to receive a good and sufficient deed to the real property as promised by Defendants.

13. Plaintiffs have no adequate remedy at law because the Purchase Agreement was a contract for the sale of real property, and pursuant to Cal. Civ. Code § 3387 money damages are presumed inadequate for its breach. Further, Plaintiffs have relied on the representations and promises of Defendants in paying the initial deposits. Plaintiffs have shifted their positions by incurring these expenses and their time to their detriment.

14. Paragraph 25 of the Residential Purchase Agreement provides the prevailing party is entitled to reasonable attorney's fees and costs.

WHEREFORE, Plaintiffs demand judgment against Defendants as set forth below.

## SECOND CAUSE OF ACTION
### (Breach of Contract)

15. Plaintiffs hereby incorporate by reference paragraphs 1 through 14 of Plaintiffs' First Cause of Action, as if fully set forth.

16. Defendants' failure and refusal to perform their obligations under the Purchase Agreement constitutes a breach of contract.

17. As a direct and proximate result of Defendants' breach of the Purchase Agreement, Plaintiffs have suffered damages in a sum according to proof.

18. Paragraph 25 in the Purchase Agreement provides that legal fees and costs shall be awarded to the prevailing party in any action arising out of the contract.

WHEREFORE, Plaintiffs demand judgment against Defendants as set forth below.

## THIRD CAUSE OF ACTION
### (Fraud by Intentional Misrepresentation)

19. Plaintiffs hereby incorporate by reference paragraphs 1 through 14 of Plaintiffs' First Cause of Action, as if fully set forth.

20. Defendants represented that if Plaintiffs would pay Defendants $22,000.00 outside of escrow and sign the contract,

Defendants would sign all later documents and sell Said Real Property to Plaintiffs as set forth in the contract.

21. The representations made by Defendants were in fact false. The truth was Defendants lied to get the $22,000.00 and then once they got the money, never cooperated again.

22. When Defendants made their representations, they, and each of them, knew the representations to be false and made these representations with the intention to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance on those representations in the manner hereafter alleged or with the expectation Plaintiffs would so act.

23. Plaintiffs at the time these representations were made by Defendants were ignorant of the falsity of the representations and believed them to be true. Plaintiffs' reliance on the Defendants' representations was reasonable, as Defendants professed to be ready to sell the house and signed the sale contract.

24. In reliance on those representations Plaintiffs were induced to and did deliver $22,000.00 to Defendants and Defendants lender outside of escrow and delivered $2,032.12 to escrow to open escrow. Had Plaintiffs known the actual facts they would not have taken such actions.

25. Plaintiffs did not discover the falsity of Defendants' representations until Defendants refused to cooperation to close escrow.

26.　As a proximate result of the fraudulent conduct of Defendants as herein alleged, Plaintiffs were induced to spend time and money in reliance on Defendants' representations. By reason of this, Plaintiffs have been damaged in excess of $25,000, according to proof.

27.　The aforementioned conduct of Defendants, and each of them, was an intentional misrepresentation, deceit, or concealment of a material fact known to Defendants with the intention on the part of Defendants of thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary and punitive damages.

28.　Paragraph 25 in the Purchase Agreement provides that legal fees and costs shall be awarded to the prevailing party in any action arising out of the contract.

Plaintiffs demand judgment against Defendants as set forth below.

WHEREFORE, Plaintiffs pray for judgment as follows:

**AS TO FIRST CAUSE OF ACTION:**

1.　For an order that Defendants specifically perform the Purchase Agreement, place the agreement and all monies paid under the agreement into escrow, and deed Said Real Property to Plaintiffs in the escrow with First American Title with the

1   title exceptions for Defendants loan or loans being cleared by

2   Defendants by close of escrow;

3   　　2.　　Assuming that the Court grants the cause of action for

4   specific performance, that damages, court costs, and attorney's

5   fees act as an offset on the purchase price of Said Real

6   Property;

7   **AS TO SECOND CAUSE OF ACTION:**

8   　　3.　　In the event that the Court does not order specific

9   performance of the Purchase Agreement, for compensatory damages

10  in the amount to be proven at trial;

11  **AS TO THIRD CAUSE OF ACTION:**

12  　　4.　　For general damages in a sum of $25,000.00 or such

13  larger sum according to proof;

14  　　5. For special damages according to proof;

15  　　6.　　For punitive damages in an amount appropriate to punish

16  the Defendants and to deter others from engaging in similar

17  misconduct;

18  **AS TO ALL CAUSES OF ACTION:**

19  　　7.　　For attorney's fees and court costs of suit herein

20  incurred to be determined by the Court; and

21  　　8.　　For such other and further relief as the Court deems

22  proper.

23

24  DATED: June 2, 2020

25  　　　　　　　　　　　　　　　　　STEPHEN M. DEAN, Attorney for
                                      Plaintiffs
26

27

*COMPLAINT FOR SPECIFIC PERFORMANCE; BREACH OF CONTRACT; FRAUD BY INTENTIONAL
MISREPRESENTATION*

## VERIFICATION

I, STEPHEN M. DEAN, declare:

That I am an attorney at law and have offices in Redding, California.  That I am the attorney for Plaintiffs and that said Plaintiffs are:

☒  absent from the County of Shasta

☐  unable to verify from some other cause

☐  corporations or public agencies, and I am verifying on behalf of the corporation or public agency as an officer thereof

and for that reason as checked above, I make this verification.

That I have read the foregoing Complaint for Specific Performance; Breach of Contract; Fraud by Intentional Misrepresentation and I am informed and believe and thereon allege that the matters contained therein are true.

Executed on June 2, 2020, Redding, California.

I declare under penalty of perjury that the foregoing is true and correct.

_____
STEPHEN M. DEAN

## EXHIBIT "A" – LEGAL DESCRIPTION

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY
OF TEHAMA, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:

LOT 16 IN BLOCK 3 OF VISTA GRANDE SUBDIVISION, AS THE SAME IS SHOWN ON THE FILED MAP IN
THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF TEHAMA, STATE OF CALIFORNIA,
SEPTEMBER 8, 1958 IN BOOK L OF MAPS AT PAGES 38 AND 39.

The Real Property or its address is commonly known as 295 San Joaquin Drive, RED BLUFF, CA
96080. The Assessor's Parcel Number for the Real Property is 039-242-03-1.

EXHIBIT  A  pg  1  of  1

DocuSign Envelope ID: C04DEBDB-C6EA-44AC-BB18-A8004EB835B5



CALIFORNIA
ASSOCIATION
OF REALTORS®

**CALIFORNIA**
**RESIDENTIAL PURCHASE AGREEMENT**
**AND JOINT ESCROW INSTRUCTIONS**
(C.A.R. Form RPA-CA, Revised 12/18)

Date Prepared: _01/26/2020_
1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _Jacob Watson, James Watson_ ("Buyer").
   B. **THE REAL PROPERTY** to be acquired is _295 San Joaquin Dr, Red Bluff, Ca 96080_ , situated in
      _Red Bluff_ (City), _____ (County), California, _96080_ (Zip Code), Assessor's Parcel No._039-242-003-000_("Property").
   C. **THE PURCHASE PRICE** offered is _One Hundred Thirty-Six Thousand_
      Dollars $ _136,000.00_ .
   D. **CLOSE OF ESCROW** shall occur on ☐_____ (date)(or ☒ _21 or less_ Days After Acceptance).
   E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.
2. **AGENCY:**
   A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R.
      Form AD).
   B. **CONFIRMATION:** The following agency relationships are confirmed for this transaction:
      Seller's Brokerage Firm _eXp Realty_ License Number _01878277_
      Is the broker of (check one): ☐ the seller; or ☒ both the buyer and seller. (dual agent)
      Seller's Agent _Edward Lenzer_ License Number _01999992_
      Is (check one): ☐ the Seller's Agent. (salesperson or broker associate) ☒ both the Buyer's and Seller's Agent. (dual agent)

      Buyer's Brokerage Firm _eXp Realty_ License Number _01878277_
      Is the broker of (check one): ☐ the buyer; or ☒ both the buyer and seller. (dual agent)
      Buyer's Agent _Edward Lenzer_ License Number _01999992_
      Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate) ☒ both the Buyer's and Seller's Agent. (dual agent)
   C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible
      Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of.................................... $ _22,000.00_
      (1) Buyer Direct Deposit: Buyer shall deliver deposit directly to Escrow Holder by electronic funds
      transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days
      after Acceptance (or _____ );
      OR (2) ☐ Buyer Deposit with Agent: Buyer has given the deposit by personal check to _____
      to the agent submitting the offer (or to _____ ), made payable to
      _____ . The deposit shall be held uncashed until Acceptance and then deposited
      with Escrow Holder within 3 business days after Acceptance (or _____ ).
      Deposit checks given to agent shall be an original signed check and not a copy.
      (Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of......... $ _____
      within _____ Days After Acceptance (or _____ ).
      If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased
      deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form
      RID) at the time the increased deposit is delivered to Escrow Holder.
   C. ☒ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer
      obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or
      ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.
   D. **LOAN(S):**
      (1) **FIRST LOAN:** in the amount of.......................................... $ _____
      This loan will be conventional financing OR ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA),
      ☐ assumed financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed
      rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (2) ☐ **SECOND LOAN** in the amount of......................................... $ _____
      This loan will be conventional financing OR ☐ Seller financing (C.A.R. Form SFA), ☐ assumed
      financing (C.A.R. Form AFA), ☐ Other _____ . This loan shall be at a fixed rate not to
      exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %.
      Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
      (3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance
      to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that
      Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender
      requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a
      part of this Agreement.
   E. **ADDITIONAL FINANCING TERMS:** _____

   F. **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of............................ $ _114,000.00_
      to be deposited with Escrow Holder pursuant to Escrow Holder instructions.
   G. **PURCHASE PRICE (TOTAL):**................................................. $ _136,000.00_
   Buyer's Initials ( _JW_ ) ( _JW_ )                                    Seller's Initials ( _CB_ ) ( _CB_ )

© 1991-2018, California Association of REALTORS®, Inc.

RPA-CA REVISED 12/18 (PAGE 1 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 1 OF 10)**

**EXHIBIT** _B_ pg _____ of _11_

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: *295 San Joaquin Dr, Red Bluff, Ca 96080*                                   Date: *January 26, 2020*

H. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, **within 3 (or _____ ) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (☐ Verification attached.)

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 14B(3), in writing, remove the appraisal contingency or cancel this Agreement within 17 (or _____ ) Days After Acceptance.

J. **LOAN TERMS:**
(1) **LOAN APPLICATIONS:** Within 3 (or ___ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. (☐ Letter attached.)
(2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.
(3) **LOAN CONTINGENCY REMOVAL:**
Within 21 (or _____ ) Days After Acceptance, Buyer shall, as specified in paragraph 14, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.
(4) ☐ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
(5) **LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

K. **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **SALE OF BUYER'S PROPERTY:**
   A. This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.
   OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

5. **ADDENDA AND ADVISORIES:**
   A. ADDENDA:
   | | |
   |---|---|
   | ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Addendum #_____ (C.A.R. Form ADM) |
   | ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
   | ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

   B. BUYER AND SELLER ADVISORIES:
   | | |
   |---|---|
   | ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
   | ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
   | ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
   | | ☐ Other |

6. OTHER TERMS: _____
   _____
   _____
   _____

7. **ALLOCATION OF COSTS**
   A. **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**
   (1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☒ environmental ☐ Other: _____ prepared by _____.
   (2) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.
   (3) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____.
   B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
   (1) ☐ Buyer ☐ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

Buyer's Initials _JW_ / _JW_                                   Seller's Initials _C. L._ / _____

RPA-CA REVISED 12/18 (PAGE 2 OF 10)

EXHIBIT *B* PG *2* of *11*

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: **295 San Joaquin Dr, Red Bluff, Ca 96080**      Date: *January 26, 2020*

   (2) (i) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

    (ii) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

    (iii) Buyer shall be provided, within the time specified in paragraph 14A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

**C. ESCROW AND TITLE:**
   (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *Split 50/50* _____.
    (b) Escrow Holder shall be _____.
    (c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.
   (2) (a) ☒ Buyer ☒ Seller shall pay for **owner's title insurance policy** specified in paragraph 13E *Split 50/50* _____.
    (b) Owner's title policy to be issued by _____.
    (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

**D. OTHER COSTS:**
   (1) ☐ Buyer ☒ Seller shall pay County transfer tax or fee _____.
   (2) ☐ Buyer ☐ Seller shall pay City transfer tax or fee _____.
   (3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____.
   (4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.
   (5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.
   (6) Buyer to pay for any HOA certification fee.
   (7) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____.
   (8) ☐ Buyer ☐ Seller shall pay for _____.
   (9) ☐ Buyer ☐ Seller shall pay for _____.
   (10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____, of a standard (or ☐ upgraded) one-year home warranty plan, issued by _____, with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____.
    Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.
    **OR** ☒ Buyer waives the purchase of a home warranty plan. Nothing in this paragraph precludes Buyer's purchasing a home warranty plan during the term of this Agreement.

**8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**
   **A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8 B or C.
   **B. ITEMS INCLUDED IN SALE:** Except as otherwise specified or disclosed,
    (1) All EXISTING fixtures and fittings that are attached to the Property;
    (2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers, security systems/alarms and the following if checked: ☐ all stove(s), except _____ ; ☐ all refrigerator(s) except _____ ; ☐ all washer(s) and dryer(s), except _____ ;
    (3) The following additional items: _____.
    (4) Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are (☐ are NOT) included in the sale.
    (5) LEASED OR LIENED ITEMS AND SYSTEMS: Seller shall, within the time specified in paragraph 14A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 14B and C.
    (6) Seller represents that all items included in the purchase price, unless otherwise specified, (i) are owned by Seller and shall be transferred free and clear of liens and encumbrances, except the items and systems identified pursuant to 8B(5) and _____, and (ii) are transferred without Seller warranty regardless of value.
   **C. ITEMS EXCLUDED FROM SALE:** Unless otherwise specified, the following items are excluded from sale: (i) audio and video components (such as flat screen TVs, speakers and other items) if any such item is not itself attached to the Property, even if a bracket or other mechanism attached to the component or item is attached to the Property; (ii) furniture and other items secured to the Property for earthquake purposes; and (iii) _____
_____. Brackets attached to walls, floors or ceilings for any such component, furniture or item shall remain with the Property (or ☐ will be removed and holes or other damage shall be repaired, but not painted).

**9. CLOSING AND POSSESSION:**
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. Seller-occupied or vacant property: Possession shall be delivered to Buyer: (i) at 6 PM or (___ ☐ AM/☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ___ ☐ AM/☐ PM on _____.

Buyer's Initials ( JW ) ( JW )        Seller's Initials ( EC ) ( JB )

RPA-CA REVISED 12/18 (PAGE 3 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 3 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     295 San Joaquin

EXHIBIT **B** pg 3 of 11

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: _295 San Joaquin Dr, Red Bluff, Ca 96080_                    Date: _January 26, 2020_

C. **Seller remaining in possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D. **Tenant-occupied property:** Property shall be vacant at least 5 (or ____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. **Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.**
OR ☐ Tenant to remain in possession (C.A.R. Form TIP).

E. At Close Of Escrow: Seller assigns to Buyer any assignable warranty rights for items included in the sale; and Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

10. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. (1) Seller shall, within the time specified in paragraph 14A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

(2) Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

(3) **Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

(4) Within the time specified in paragraph 14A, (i) Seller, unless exempt from the obligation to provide a TDS, shall, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ); (ii) if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with an Exempt Seller Disclosure (C.A.R. Form ESD).

(5) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

(6) In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies of which Buyer is otherwise aware, or which are disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

(7) If any disclosure or notice specified in paragraph 10A(1), or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days After** Delivery in person, or **5 Days After** Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

B. **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet, and home energy rating pamphlet; (ii) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. **WITHHOLDING TAXES:** Within the time specified in paragraph 14A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
(1) SELLER HAS: 7 (or ____ ) Days After Acceptance to disclose to Buyer if the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

Buyer's Initials ( _____ ) ( _____ )                    Seller's Initials ( _____ ) ( _____ )

RPA-CA REVISED 12/18 (PAGE 4 OF 10)
**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 4 OF 10)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com          295 San Joaquin

EXHIBIT _B_ pg _4_ of _11_

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: <u>295 San Joaquin Dr, Red Bluff, Ca  96080</u>　　　　　　　　Date: <u>January 26, 2020</u>

(2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). (vi) private transfer fees; (vii) Pet fee restrictions; and (viii) smoking restrictions. Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

11. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
   A. Seller shall, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
   B. Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 14B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
   C. **Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.**

12. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
   A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to: (i) a general physical inspection; (ii) an inspection specifically for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); (iii) inspect for lead-based paint and other lead-based paint hazards; (iv) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA); (v) review the registered sex offender database; (vi) confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; and (vii) review and seek approval of leases that may need to be assumed by Buyer. Without Seller's prior written consent, Buyer shall neither make nor cause to be made: invasive or destructive Buyer Investigations, except for minimally invasive testing required to prepare a Pest Control Report; or inspections by any governmental building or zoning inspector or government employee, unless required by Law.
   B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 14B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
   C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
   D. **Buyer indemnity and seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

13. **TITLE AND VESTING:**
   A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
   B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
   C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
   D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
   E. Buyer shall receive a CLTA/ALTA "Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. If not, Escrow Holder shall notify Buyer. A title company can provide information about the availability, coverage, and cost of other title policies and endorsements. If the Homeowner's Policy is not available, Buyer shall choose another policy, instruct Escrow Holder in writing and shall pay any increase in cost.

Buyer's Initials (　JM　) (　JM　)　　　　　　Seller's Initials (　　) (　　)

RPA-CA REVISED 12/18 (PAGE 5 OF 10)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 5 OF 10)

EXHIBIT B pg 5 of 11

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-B818-A8004EB835B5

Property Address: **295 San Joaquin Dr, Red Bluff, Ca 96080**      Date: **January 26, 2020**

**14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).

A. **SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5, 6, 7, 8B(5), 10A, B, C, and F, 11A and 13A. If, by the time specified, Seller has not Delivered any such item, Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement.

B. **(1) BUYER HAS: 17 (or ____ ) Days** After Acceptance, unless otherwise agreed in writing, to:
   (i) complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(5), and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 10A.
   **(2)** Within the time specified in paragraph 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.
   **(3)** By the end of the time specified in paragraph 14B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 14A, then Buyer has 5 (or ____ ) Days After Delivery of any such items, or the time specified in paragraph 14B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
   **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 14B(1) and before Seller cancels, if at all, pursuant to paragraph 14D, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 14D(1).
   **(5)** Access to Property: Buyer shall have access to the Property to conduct inspections and investigations for 17 (or ____ ) Days After Acceptance, whether or not any part of the Buyer's Investigation Contingency has been waived or removed.

C. ☐ **REMOVAL OF CONTINGENCIES WITH OFFER:** Buyer removes the contingencies specified in the attached Contingency Removal form (C.A.R. Form CR). If Buyer removes any contingency without an adequate understanding of the Property's condition or Buyer's ability to purchase, Buyer is acting against the advice of Broker.

D. **SELLER RIGHT TO CANCEL:**
   **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.
   **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A, or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification, or a satisfactory verification if Seller reasonably disapproves of the verification already provided, as required by paragraph 3C or 3H; (v) In writing assume or accept leases or liens specified in 8B5; (vi) Return Statutory and Lead Disclosures as required by paragraph 10A(5); or (vii) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 21B; or (viii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

E. **NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least 2 (or ____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 14.

F. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

G. **CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least 3 (or ____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than 3 Days Prior to the scheduled close of escrow.

H. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit. (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds** (Civil Code §1057.3).

Buyer's Initials ( JW ) ( JW )      Seller's Initials ( _P_ ) ( _____ )

RPA-CA REVISED 12/18 (PAGE 6 OF 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 6 OF 10)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com      295 San Joaquin

**EXHIBIT B pg 6 of 11**

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: **295 San Joaquin Dr, Red Bluff, Ca  96080**                                    Date: **January 26, 2020**

15. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within 5 (or ___ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 11; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

16. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of Invoices and paid receipts and statements to Buyer prior to final verification of condition.

17. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

18. **BROKERS:**
   A. **COMPENSATION:** Seller or Buyer, or both, as applicable, agree to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
   B. **SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

19. **REPRESENTATIVE CAPACITY:** If one or more Parties is signing this Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 31 or 32 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

20. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**
   A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 10C, 13, 14G, 17, 18A, 19, 20, 26, 29, 30, 31, 32 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 18A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ___ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 10 or elsewhere in this Agreement.
   B. A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days After** Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 10C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

Buyer's Initials ( *JW* ) ( *JW* )                                   Seller's Initials ( *CC* ) ( *X* )

RPA-CA REVISED 12/18 (PAGE 7 OF 10)

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 7 OF 10)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com              295 San Joaquin

**EXHIBIT B pg 7 of 11**

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: <u>295 San Joaquin Dr, Red Bluff, Ca  96080</u>　　　　　　　　Date: <u>January 26, 2020</u>

 C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 18A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 18A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

 D. Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

 E. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

## 21. REMEDIES FOR BUYER'S BREACH OF CONTRACT:

 **A.** Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

 **B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 14H, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT THE TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

  Buyer's Initials ____ / ____　　　　　　Seller's Initials ____ / ____

## 22. DISPUTE RESOLUTION:

 **A.** MEDIATION: The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Real Estate Mediation Center for Consumers (www.consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 22C.

 **B. ARBITRATION OF DISPUTES:**

  **The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 22C.**

  **"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

  **"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

  Buyer's Initials ____ / ____　　　　　　Seller's Initials ____ / ____

 **C.** ADDITIONAL MEDIATION AND ARBITRATION TERMS:

  (1) EXCLUSIONS: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

Buyer's Initials ( ____ ) ( ____ )　　　　　　Seller's Initials ( ____ ) ( ____ )
RPA-CA REVISED 12/18 (PAGE 8 OF 10)

**EXHIBIT** _B_ pg _8_ of _11_

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: _295 San Joaquin Dr, Red Bluff, Ca 96080_     Date: _January 26, 2020_

    (2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

    (3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to this Agreement.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 22A.

26. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the separate written consent of Seller to a specified assignee. Such consent shall not be unreasonably withheld. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller. (C.A.R. Form AOAA).

27. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

28. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. The Parties have read and acknowledge receipt of a Copy of the offer and agree to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

29. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

30. **DEFINITIONS:** As used in this Agreement:
    **A.** "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
    **B.** "Agreement" means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
    **C.** "C.A.R. Form" means the most current version of the specific form referenced or another comparable form agreed to by the parties.
    **D.** "Close Of Escrow", including "COE", means the date the grant deed, or other evidence of transfer of title, is recorded.
    **E.** "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
    **F.** "Days" means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
    **G.** "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
    **H.** "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
    **I.** "Deliver", "Delivered" or "Delivery", unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 10, regardless of the method used (i.e., messenger, mail, email, fax, other).
    **J.** "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
    **K.** "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
    **L.** "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
    **M.** "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.

31. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by ☐ _____ ☐ AM/ ☐ PM, on _____ (date)).

☐ One or more Buyers is signing this Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date _1/26/2020_     BUYER _____ _Jacob Watson_
(Print name) _Jacob Watson_     ⌐DocuSigned by:⌐   375C23639463495
Date _1/26/2020_     BUYER _____ _James Watson_
(Print name) _James Watson_     375C23639403495

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Seller's Initials ( _C.L_ ) 

**RPA-CA REVISED 12/18 (PAGE 9 OF 10)**

CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 9 OF 10)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     295 San Joaquin

EXHIBIT _B_ pg _9_ of _11_

DocuSign Envelope ID: C04DEBD8-C6EA-44AC-BB18-A8004EB835B5

Property Address: _295 San Joaquin Dr, Red Bluff, Ca 96080_                    Date: _January 26, 2020_

**32. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, and agrees to sell the Property on the above terms and conditions. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE is **SUBJECT TO ATTACHED COUNTER OFFER** (C.A.R. Form SCO or SMCO) DATED:
_____

☐ One or more Sellers is signing this Agreement in a representative capacity and not for him/herself as an Individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _1/27/20_ SELLER _Harlan Page Confer_
(Print name) _Harlan Confer_ _HARLAN PAGE CONFER_

Date _1/27/20_ SELLER _Charlotte C Confer_
(Print name) _Charlotte Confer_ _Charlotte C. Confer Charlotte C Confer_

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( _____ / _____ ) (Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was
 (Initials)         personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
                    ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by
Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation
is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that
Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Buyer's Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

Buyer's Brokerage Firm _eXp Realty_                                              DRE Lic. # _01878277_
By _____   _Edward Lenzer_ DRE Lic. # _01999992_         Date _1/26/2020_
By _____                  DRE Lic. # _____           Date _____
Address _2603 Camino Ramon Ste 200_              City _San Ramon_              State _Ca_  Zip _94583_
Telephone _____ Fax _____      E-mail _____

Seller's Brokerage Firm _eXp Realty_                                             DRE Lic. # _01878277_
By _____   _Edward Lenzer_ DRE Lic. # _01999992_         Date _1/26/2020_
By _____                  DRE Lic. # _____           Date _____
Address _2603 Camino Ramon Ste 200_              City _San Ramon_              State _CA_  Zip _94583_
Telephone _(530)415-5748_ Fax _____      E-mail _elenzer@hotmail.com_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____, and agrees to act as Escrow Holder subject to paragraph 20 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _____                      Escrow # _____
By _____                                            Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) Seller's Broker presented this offer to Seller on _____ (date).
                              Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
                          Seller's Initials

©1991- 2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Buyer Acknowledges that page 10 is part of this Agreement  _____  _____
                                                          Buyer's Initials

RPA-CA REVISED 12/18 (PAGE 10 of 10)

**CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT (RPA-CA PAGE 10 OF 10)**


EXHIBIT _B_ pg _10_ of _11_

# CALIFORNIA ALL- PURPOSE CERTIFICATE OF ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                  }
County of ___Tehama___                              )s.s.

On ___Jan 27, 2020___ before me, __Cheryl McGinnis, notary public__
                                              (insert name and title of officer)

personally appeared __Harlan Page Conter III + Charlotte C Conter__
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the forgoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
        Signature of Notary Public

> CHERYL MCGINNIS
> Notary Public – California
> Tehama County
> Commission # 2184212
> My Comm. Expires Mar 21, 2021

---------------------------------- OPTIONAL INFORMATION ----------------------------------
Although the information in this section is not required by law, it could prevent fraudulent removal and reattachment of this
acknowledgment to an unauthorized document and may prove useful to persons relying on the attached document.

Description of Attached Document
The preceding Certificate of Acknowledgment is attached to a Document titled __Residential Purchase__
__Agreement__, containing _____pages, including Acknowledgment, and dated _____.

EXHIBIT **B** pg 11 of 11

| American Land Title Association | ALTA Settlement Statement – Buyer |
|---|---|
| | Adopted 05-01-2015 |

File No.: 5102-6136076
Printed: 05/07/2020, 9:26 AM
Officer/Escrow Officer: Becky Bishop/BB
Settlement Location:
415 Century Park Drive, Yuba City, CA 95991

**First American Title Company**

415 Century Park Drive • Yuba City, CA 95991
Phone: (530)673-5527  Fax: (866)728-5204
Estimated Settlement Statement



Property Address: 295 San Joaquin Dr, Red Bluff, CA 96080
Buyer: Jacob Watson; James Watson
Seller: Harlan Confer, Charlotte Confer
Lender:
Settlement Date: 02/17/2020
Disbursement Date:

| | Buyer | |
|---|---|---|
| **Description** | **Debit** | **Credit** |
| **Financial** | | |
| Sale Price | 136,000.00 | |
| Deposit:  Receipt No. 687137978 on 03/12/2020 by Jacob Watson | | 2,032.12 |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes  05/12/20 to 07/01/20  @$731.29/semi | 199.81 | |
| Paid outside closing to payoff lender | | 22,000.00 |
| | | |
| **Title Charges & Escrow / Settlement Charges** | | |
| Binder Resale Extension–Eagle Coverage  to First American Title Company | 77.00 | |
| Eagle Owners Policy  to First American Title Company | 383.00 | |
| Escrow Fee - One Half  to First American Title Company | 475.00 | |
| | | |
| **Government Recording and Transfer Charges** | | |
| Record Deed  to Tehama County Recorder | Paid by Others-Settlement Agent $20.00 | |
| | | |
| **Miscellaneous** | | |
| Homeowner's Insurance Premium  to Estimated Fire Insurance | 1,000.00 | |
| | | |
| **Subtotals** | 138,134.81 | 24,032.12 |
| Due From Buyer | | 114,102.69 |
| Totals | 138,134.81 | 138,134.81 |

Escrow related fees including separate fees for overnight mail- courier or notary services that are not included as part of First American's filed escrow fee may include a markup over the direct cost to First American for such services.

Our wire instructions do not change.  Our banking institution is First American Trust.  If you receive an email or other communication that appears to be from us or another party involved in your transaction instructing you to wire funds to a bank other than First American Trust, you should consider it suspect and you must call our office at an independently

Copyright 2015 American Land Title Association.
All rights reserved

File # 5102-6136076
Printed on 05/07/2020 at 9:26 AM



EXHIBIT __C__ pg __1__ of __2__

verified phone number.  Do not inquire with the sender.

Copyright 2015 American Land Title Association.
All rights reserved

File # 5102-6136076
Printed on 05/07/2020 at 9:26 AM

EXHIBIT ___C___ pg. 2 of 2

```
 1 │ STEPHEN M. DEAN
   │ Attorney at Law
 2 │ State Bar #73328
   │ MICHAEL E.M. DEAN
 3 │ Attorney at Law
   │ State Bar # 287775
 4 │ DEAN LAW FIRM, INC.
   │ 1610 West Street, Ste. 2
 5 │ P.O. Box 994134
   │ Redding, CA  96099 4134
 6 │ Telephone: (530)246-7691
   │ Fax Number: (530) 246-7910
 7 │
 8 │ Attorneys for Plaintiffs
```

**FILED**
SUPERIOR COURT OF CALIFORNIA

**OCT 0 7 2020**

COUNTY OF TEHAMA
KEVIN HARRIGAN, CLERK OF THE COURT
BY _____ ,DEPUTY

SUPERIOR COURT OF CALIFORNIA
IN AND FOR THE COUNTY OF TEHAMA
-oOo-

| | |
|---|---|
| Plaintiffs: JACOB WATSON and<br>JAMES WATSON | ) CASE NO. 20CI000087<br>)<br>) ORDER FOR SPECIFIC<br>) PERFORMANCE OF SALES<br>) CONTRACT OF REAL<br>) PROPERTY<br>) |
| v. | ) |
| Defendants: HARLAN P. CONFER;<br>aka HARLAN PAGE CONFER,<br>III;<br>CHARLOTTE C. CONFER;<br>and DOES I-XX, inc. | ) DATE: October 7, 2020<br>) TIME: 1:30 p.m.<br>) DEPT: One<br>)<br>) |

This matter came on for hearing on October 7, 2020, at 1:30 p.m., in Department One, the Honorable Judge _____ presiding; for default prove up in an action for Specific Performance. Plaintiff JACOB WATSON appeared, as did Plaintiff's Counsel Stephen M. Dean; Defendants HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE C. CONFER did not appear. Based upon the moving and opposing papers filed herein and testimony presented to the Court, the Court finds as follows:

*ORDER FOR SPECIFIC PERFORMANCE OF SALES CONTRACT OF REAL PROPERTY*

1

EXHIBIT **2**

1.    That a valid written contract between JACOB WATSON and JAMES WATSON ("Plaintiffs" or "Buyers"), and HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER ("Defendants" or "Sellers"), exists for the sale of the real property commonly known as 295 San Joaquin Drive, Red Bluff, Tehama County, California 96080, APN 039-242-03-1 (the "Property"), and more particularly described in Exhibit A, attached hereto and made a part hereof;

2.    That the contract specified JACOB WATSON and JAMES WATSON were to purchase the Property for One Hundred Thirty Six Thousand Dollars ($136,000.00) in cash within 21 days of January 26, 2020; and in return HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER were to deed the property, with Title Insurance on the property securing good title to JACOB WATSON and JAMES WATSON, and deliver possession of the property to JACOB WATSON and JAMES WATSON.

3.    JACOB WATSON and JAMES WATSON paid Nineteen Thousand Nine Hundred Sixty Seven Dollars and Eighty Eight Cents ($19,967.88) to Sellers' lender outside of escrow, and opened escrow 5102-6136076 at First American Title Company in Yuba City, California with an additional deposit of Two Thousand Thirty Two Dollars and Twelve Cents ($2,032.12), for a total of Twenty Two Thousand Dollars ($22,000.00). Plaintiffs are ready, willing and able to fund the escrow to close escrow.

//

//

*ORDER FOR SPECIFIC PERFORMANCE OF SALES CONTRACT OF REAL PROPERTY*

4.    Defendants HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER, have refused to sign any escrow documents or cooperate with escrow at all, thereby preventing JACOB WATSON and JAMES WATSON from completing performance.

5.    Defendants HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER have kept possession since March 27, 2020 when escrow should have closed.

6.    JACOB WATSON and JAMES WATSON have shown that monetary damages are an insufficient remedy, and that specific performance is necessary in equity.

NOW THERERORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. That the California Residential Purchase Agreement and Joint Escrow Instructions is approved as the contract and escrow instructions between JACOB WATSON and JAMES WATSON, Plaintiffs, and HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER, Defendants. A true copy of such Purchase Agreement is attached hereto as Exhibit "B" and made a part hereof.

2. That HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER are hereby ORDERED to sign First American Title Escrow Instructions consistent with the Purchase Contract attached as Exhibit "B" except as modified by this Judgment, within Ten (10) days of being served a Notice of Entry of this Order, and depositing such instructions with First American Title.

//

//

3. That HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER are hereby ORDERED to sign and have notarized a Deed to 295 San Joaquin Drive, Red Bluff, Tehama County, California 96080, APN 039-242-03-1 more particularly described in Exhibit "A" attached hereto, within Ten (10) days of being served a Notice of Entry of this Order, transferring said property to JACOB WATSON and JAMES WATSON, and depositing said Deed with First American Title.

4. That Escrow is to be closed no later than 90 days from the date of execution of this Order.

5. Escrow shall close within 2 business days after Defendants have deposited the Deed and escrow instructions with First American, and Plaintiffs have deposited the cash balance of the purchase price with First American Title, after credits given in this judgment are deducted from the price.

6. That HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER shall not delay or refuse to sign any documents needed for escrow to close, or to get a loan payoff on CONFER's loan on the property.

7. That if HARLAN P. CONFER aka HARLAN PAGE CONFER, III and CHARLOTTE CONFER shall not sign the First American Title escrow instructions or the Deed to transfer 295 San Joaquin Drive, Red Bluff, Tehama County, California, 96080, or both, within THIRTY (30) Days of being served with a Notice of Entry of Order, that Plaintiffs JACOB WATSON and JAMES WATSON may petition the Court Ex Parte to hold HARLAN P. CONFER aka HARLAN PAGE CONFER, III

1   and CHARLOTTE CONFER in contempt of court and get the Court to

2   take such action as necessary to get CONFER to sign documents to

3   close escrow.

4   ~~8. The Court Awards JACOB WATSON and JAMES WATSON $5,730.00~~

5   in breach of contract damages, which shall be a credit to JACOB

6   WATSON and JAMES WATSON against funds to be paid to HARLAN P.

7   CONFER aka ~~HARLAN~~ PAGE CONFER, III and CHARLOTTE CONFER in

8   ~~escrow.~~

9        9. Plaintiffs JACOB WATSON and JAMES WATSON shall recover

10  their attorney's fees and costs from HARLAN P. CONFER aka HARLAN

11  PAGE CONFER, III and CHARLOTTE CONFER, but such sums shall not

12  be a credit to JACOB WATSON and JAMES WATSON against funds

13  needed for escrow to close.

14  ~~10. Plaintiffs JACOB WATSON and JAMES WATSON shall recover~~

15  ~~their attorney's fees and costs from HARLAN P. CONFER aka HARLAN~~

16  ~~PAGE CONFER, III and CHARLOTTE CONFER,~~

17       ☐ in the sum of $4,444.42.

18       ☐ upon making a motion and the Court awarding attorney's

19  ~~fees and costs.~~

20       11. The Court further ORDERS: *Reservation of J for*

21  *2nd default re money requests*

22  _____

23  _____

24

25  Dated: October 7, 2020          *Richard S Whitney*
                                    JUDGE OF THE SUPERIOR COURT

26

REBECCA AYALA Endorsed

1   STEPHEN M. DEAN
Attorney at Law
2   State Bar #73328
MICHAEL E.M. DEAN
3   Attorney at Law
State Bar # 287775
4   DEAN LAW FIRM, INC.
1610 West Street, Ste. 2
5   P.O. Box 994134
Redding, CA 96099 4134
6   Telephone: (530)246-7691
Fax Number: (530) 246-7910
7

**FILED**
SUPERIOR COURT OF CALIFORNIA

JAN 1 9 2021

COUNTY OF TEHAMA
KEVIN HARRIGAN, CLERK OF THE COURT
BY_____DEPUTY
REBECCA AYALA

8   Attorneys for Plaintiffs

9             SUPERIOR COURT OF CALIFORNIA
10         IN AND FOR THE COUNTY OF TEHAMA
                  -o0o-
11

12   Plaintiffs: JACOB WATSON and    ) CASE NO. 20CI000087
            JAMES WATSON            )
13                               ) PROOF OF SERVICE OF
                              ) ORDER FOR SPECIFIC
14   v.                            ) PERFORMANCE OF SALES
                              ) CONTRACT OF REAL
15                               ) PROPERTY
   Defendants: HARLAN P. CONFER;    )
16             aka HARLAN PAGE CONFER,   )
            III;                     )
17             CHARLOTTE C. CONFER;      )
            and DOES I-XX, inc.       )
18

19

20

21

22

23

24

25

26

---

*PROOF OF SERVICE OF ORDER FOR SPECIFIC PERFORMANCE OF SALES CONTRACT OF REAL PROPERTY*
1

EXHIBIT 3

<u>**PROOF OF SERVICE**</u>

**Re:  Harlan P. Confer aka Harlan Page Confer, III**

PROPERTY LOCATION:  **295 San Joaquin Drive**
                            **Red Bluff, CA 96080**

I, the undersigned, being at least 18 years of age, declare under penalty of perjury that I served the following:

**ORDER FOR SPECIFIC PERFORMANCE OF
SALES CONTRACT OF REAL PROPERTY**

of which the attached is a true copy, on the mentioned resident in possession in the manner(s) indicated below.

**(XX) On <u>10/09/2020 at 5:25 p.m.</u> I handed the Notice to the resident**

(  ) The above named resident being absent from the premises, on _____ I handed the Notice to a person of suitable age and discretion at _____ and mailed a copy (First Class) to _____ at the above address on _____. I handed the notice to:

(  ) There being no person of suitable age and discretion at the leased premises, I posted the Notice in a conspicuous place by the entrance of the above address on _____ and mailed a copy to _____ first class mail on _____ to the above-reference address.

Executed on November 3, 2020, at Redding, California.

Fee for Service: $74.04

MARTIN G. RAUCH,
Registered Process Server,
Shasta County, #215

**PROOF OF SERVICE**

**Re:  Charlotte C. Confer**

PROPERTY LOCATION:   **295 San Joaquin Drive**
                     **Red Bluff, CA 96080**

I, the undersigned, being at least 18 years of age, declare under
penalty of perjury that I served the following:

**ORDER FOR SPECIFIC PERFORMANCE OF**
**SALES CONTRACT OF REAL PROPERTY**

of which the attached is a true copy, on the mentioned resident in
possession in the manner(s) indicated below.

**(XX) On 10/09/2020 at 5:25 p.m. I handed the Notice to the resident**

(  ) The above named resident being absent from the premises, on
    _____ I handed the Notice to a person of suitable age
    and discretion at _____ and mailed a copy (First Class) to
    _____ at the above address on _____.
    I handed the notice to:

(  ) There being no person of suitable age and discretion at the
    leased premises, I posted the Notice in a conspicuous place by
    the entrance of the above address on _____
    and mailed a copy to _____ first class mail on
    _____ to the above-reference address.

Executed on November 3, 2020, at Redding, California.


Fee for Service: $74.03

                                    _____
                                    MARTIN G. RAUCH,
                                    Registered Process Server,
                                    Shasta County, #215

# Dean Law Firm, Inc.

1610 West Street, Suite 2
P.O. BOX 994134
Redding, CA 96099-4134
Telephone: (530) 246-7691
Fax: (530) 246-7910

Stephen M. Dean
sdean@smdeanlaw.com

Michael E. M. Dean
mdean@smdeanlaw.com

October 23, 2020

Nathan O. S. Jones
Albright & Jones
P.O. Box 1076
Red Bluff, CA 96080
Via Mail & Fax: (530) 527-4580

RE: Watson v Confer

Dear Mr. Jones:

Thank you for contacting me. My understanding is you now represent the Confers.

My clients were not aware of any discussion of the Confers purchasing the property back. However, my clients are willing to work with you to find any acceptable way to resolve this situation.

What my clients have in this case is:

1. The contract down payment $22,000.00.
2. My fees and costs. Per the last billing cycle, my fees were $2,651.00 and costs were $766.49, for a total of $3,417.49. There are some fees for the last billing cycle, but if we can settle this quickly my total should be $5,000.00 or less.

Thus, my client's total out of pocket in this would be $27,000.00. Adding on the $40,000.00 your clients state was the deal would be they pay my clients $67,000.00 and they own the home we drop all claims to it, and you and I figure out how to get rid of the lawsuit.

My clients are willing to do this, but need some proof, like within ten days, that your clients have some way to come up with the funds. So we can draw up the papers to do the settlement, but would want proof your clients can come up with the funds, a loan approval or something in ten days and complete this in about 45 days.

Please talk to the Confers and respond within five days.

Thank you.

Yours Truly,

STEPHEN M. DEAN
SMD/kj

EXHIBIT 4

# Dean Law Firm, Inc.

1610 West Street, Suite 2
P.O. BOX 994134
Redding, CA 96099-4134
Telephone: (530) 246-7691
Fax: (530) 246-7910

Stephen M. Dean
sdean@smdeanlaw.com

Michael E. M. Dean
mdean@smdeanlaw.com

November 11, 2020

Nathan O. S. Jones
Albright & Jones
P.O. Box 1076
Red Bluff, CA 96080
Via Mail & Fax: (530) 527-4580

RE: Watson v Confer

Dear Mr. Jones:

I got a call from you October 21, 2020. You made legal arguments
and proposed a settlement framework. I responded October 23, 2020
agreeing to the settlement framework.  I have never heard from you
again, by fax, mail or phone.

At this time, unless I hear from you within ten (10) days, I will
have to assume your call was another of the Confer delaying
strategies and proceed forward.

Please respond if you are still involved.

Thank you.

Yours Truly,

STEPHEN M. DEAN
SMD/kj

EXHIBIT  5